**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,        )<br>                                               )<br>                  Plaintiff,          )<br>                                               )<br>     vs.                                 )<br>                                               )<br>                                               )<br> A. James Whitlock,           )<br>                                               )<br>                  Defendant.     )<br>                                               ) | CR-11-0736-PHX-DGC (LOA)<br><br>**ORDER** |

The Government seeks the detention of Defendant A. James Whitlock[1] ("Whitlock") upon the grounds that he is a serious flight risk, a danger to the community,[2] and no condition or combination of release conditions exist that would reasonably assure

---

[1] Privately retained defense counsel, Booker T. Evans, informs the Court and the Government that the name in the caption of the indictment is his father's name, not Defendant's.

[2] None of the crimes charged in the indictment meets the statutory definition of "crime of violence" per 18 U.S.C. §3156(a)(4). Nevertheless, the 2006 amendment to the Bail Reform Act authorizes the government to argue, and the court to detain, a defendant on the basis that no release conditions would reasonably assure the safety of any other person or the community provided such defendant is charged with "any felony that is not otherwise a crime of violence that involves . . . the possession or use of a firearm . . . ." 18 U.S.C. 3142(f)(1)(E); *United States v. Valles*, 2008 WL 2262620, * 1 (E.D.Cal., June 2, 2008); *United States v. Clifton*, 2007 WL 2688648, * 1 (W.D.N.C., Sept. 10, 2007). Thus, the Court may properly consider Defendant's dangerousness if released because the charges involve the "possession or use of a firearm." 18 U.S.C. 3142(f)(1)(E).

Whitlock's appearance at future court proceedings, and the safety of the community were Whitlock released from custody.  After considering the parties' proffers and oral arguments at the May 5, 2011 detention hearing, the Pretrial Services reports, the controlling and persuasive authorities on the issue of detention, and all the factors set forth in 18 U.S.C. §3142(g), the Court finds that the Government has proven by a preponderance of the evidence that Whitlock is a serious flight risk, by clear and convincing evidence that Whitlock's release presents a danger to the community, and no combination of conditions exist that would reasonably assure his appearance at future court proceedings and the safety of the community if Whitlock is released from custody.

**I. Bail Reform Act of 1984**

"The Bail Reform Act [the "Act"], 18 U.S.C. §§ 3141-3150, authorizes and sets forth the procedures for a judicial officer to order the release or detention of an arrested person, pending trial, sentence, and appeal."[3] The Act requires a district court to order a defendant detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir.1985). "The district court has a duty to engage in a two-step inquiry before ordering a defendant released or detained pending trial." *United States v. Gentry*, 455 F.Supp.2d 1018, 1020 (D.Ariz. 2006) (quoting *United States v. Hollender*, 162 F.Supp.2d 261, 264 (S.D.N.Y. 2001)); 18 U.S.C. § 3142(b) and (e). First, the court must make a finding as to whether the defendant presents a "serious risk that such person will flee" if not detained. 18 U.S.C. § 3142(f)(2)(A). "Second, if the defendant is likely to flee, the district court must determine whether some set of conditions would sufficiently vitiate that risk." *Gentry*, 455 F.Supp.2d at 1020 (citation omitted); 18 U.S.C. § 3142(g).

---

[3] David N. Adair, Jr., Federal Judicial Center, *The Bail Reform Act of 1984* (3rd Ed. 2006), p. vii.

In making the determination whether conditions exist that would reasonably assure a defendant's appearance and the public's safety, section 3142(g) requires the district court to consider four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or community that would be posed by the person's release. 18 U.S.C. § 3142(g). The weight to be accorded to each of these factors rests in the court's discretion. *Gentry*, 455 F.Supp.2d at 1020. The Act, however, mandates release of a defendant facing trial under the "least restrictive" condition or combination of conditions that will reasonably assure the defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(c)(B); *Motamedi*, 767 F.2d 1405. The burden of proof rests with the Government which must establish the risk of flight by a preponderance of the evidence, and the risk of danger by the higher standard of clear and convincing evidence. *Id.* at 1406 ("Under the 1984 Act, a finding that a person presents a danger to the community must be supported by clear and convincing evidence."). Reminding the district courts of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons, the *Motamedi* court indicated that "[o]nly in rare circumstances should release be denied," and "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405, 1407.

**II. Analysis of Factors**

    **A. Risk of Flight**

Whitlock, a 33-year old U.S. citizen and New Jersey resident, is facing a likely prison sentence if convicted of all five charged crimes. The Ninth Circuit permits the district court to consider possible punishment as an incentive for a defendant to flee in assessing a

defendant's risk of flight. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).[4] Whitlock's personal history in the last eight years, the recent allegations in New Jersey, his significant substance abuse issues, and the allegations in this case are relevant in assessing Whitlock's risk of flight and danger to the public if released.

Whitlock is accused of exchanging guns for illicit drugs, allegedly for his own personal use. According to the Government, Whitlock lied when he answered ATF form 4473 that he was the actual buyer of the firearms identified in the indictment when, in fact, he was purchasing them for someone else to exchange for illicit drugs. See, *United States v. Holley*, 2011 WL 1099797 (S.D.Cal., March 24, 2011). The April 19, 2011 indictment charges Whitlock with one count of Dealing in Firearms Without a License from between October 24, 2009 and March 29, 2011 in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D) (Count 1); and four counts of False Statement in the Acquisition of a Firearm, occurring on January 4, 2010 (Count 2), March 5, 2010 (Count 3), March 5, 2010 (Count 4), and August 6, 2010 (Count 5), all in violation of 18 U.S.C. § 922(a)(6). Count 1 in the indictment is a class D felony, carrying a maximum prison sentence of five years; counts 2 through 5 are class C felonies, carrying maximum prison sentences of ten years each. See, 18 U.S.C. §§ 924(a)(1)(D), 924(a)(2),[5] 3559(a)(3), (4).

Section 922(a)(6) states in relevant part that it is unlawful for any person "knowingly to make any false or fictitious oral or written statement . . . intended to or likely to deceive such . . . dealer with respect to any fact material to the lawfulness of the [firearm]

---

[4] "[T]he defendants are charged with multiple counts, and it is reasonable, from their perspective, to look at the potential maximum sentences they face if they were found guilty on each count and sentenced consecutively on each count . . . Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."

897 F.2d at 995.

[5] Title 18 U.S.C. § 924(a)(2) provides: "Whoever knowingly violates subsection (a)(6) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).

- 4 -

sale . . . ." 18 U.S.C. § 922(a)(6). A conviction under 18 U.S.C. § 922(a)(6) falls under § 2K2.1 of the United States Sentencing Guidelines, resulting in a likely base offense level of 12, assuming the higher offense levels are inapplicable. Pursuant to U.S.S.G. § 2K2.1(b)(1)(A), an increase of two (2) levels is added to the base offense level for three to seven firearms. U.S.S.G. § 2K2.1(b)(1)(A), U.S. Sentencing Guidelines manual at 248 (2010); *United States v. Wilson*, 73 Fed. Appx. 936, 937 (9th Cir. 2003). If there is a 4-level increase for possession of a firearm in connection with committing another felony (selling or possession illicit drugs) pursuant to U.S.S.G. § 2K2.1(b)(6),[6] Whitlock's offense level would be 18, warranting a Guideline sentence of 27 to 33 months if Whitlock is in the lowest criminal history category and there are no other enhancements or downward departures.[7]

After considering all the evidence and counsels' proffers, the arguments of both counsel, the controlling and persuasive authorities on the issues *sub judice* and all the factors set forth in 18 U.S.C. §3142(g), the Court finds that the Government has proven by a preponderance of the evidence that Whitlock is a serious flight risk and that no combination of conditions exist that would reasonably assure his appearances at future court proceedings.

### B. Nature and Circumstances of the Crimes Charged

As previously mentioned, the Government alleges that Whitlock exchanged guns for illicit drugs, allegedly for his own personal use. The indictment charges Whitlock with Dealing in Firearms Without a License from between October 24, 2009 and March 29,

---

[6] See, *United States v. Wooten*, 253 Fed.Appx. 854, 856 (11th Cir. 2007) (4-level increase to defendant's base offense level, pursuant to U.S.S.G. § 2K2.1(b)(6), affirmed "because he possessed the firearm in connection with another felony offense (possession of marijuana) . . . .").

[7] Because all the counts would likely be grouped even though counts 2, 3, and 5 allegedly occurred on different dates, concurrent sentences would likely be imposed. U.S.S.G. 5G1.2(c). But see, *United States v. Lone Fight*, 625 F.3d 523, 525 (8th Cir. 2010); 18 U.S.C. § 3584.

2011 and four counts of False Statement in the Acquisition of a Firearm, occurring in 2010. While each count is a felony, none of the charges carry a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(2). There is no evidence Whitlock possessed, used or discharged the firearms in connection with committing a state or federal crime of violence nor is there any evidence that Whitlock was a prohibited possessor, e.g., a felon, at the various times he purchased the firearms. There is also no evidence that the drugs Whitlock allegedly received in exchange for the firearms were distributed to others or that Whitlock was dealing in guns to, or associated with, members of a Mexican drug cartel.

This detention factor weighs in favor of Whitlock's release with conditions.

### C. Weight of the Evidence against Defendant

Of the various detention factors a court must consider, the Ninth Circuit has declared that the weight of the evidence is the least important. *Motamedi*, 767 F.2d at 1407; *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972).

The Government proffers that it has a very strong case against Whitlock. There are several federal firearms' dealers, or their employees, in the Scottsdale area who sold the firearms alleged in the indictment to Whitlock and are likely willing to cooperate and testify if requested by the Government to do so. Moreover, because federal firearms' dealers are legally required to document each sale, written documents, purportedly signed by Whitlock, exist to corroborate the witnesses' testimony and sales alleged in the indictment. Significantly, the Government proffered at the detention hearing that when confronted with the allegations, Whitlock admitted his culpability.

This detention factor weighs in favor of Whitlock's detention.

### D. History and Characteristics of Defendant

Whitlock, age 33, has no known ties to the Phoenix community and District of Arizona, but he has significant ties to the State of New Jersey. According to the PTS report, Whitlock was born in New Jersey and, most recently, has been living in Ocean, New Jersey, with his parents. (Doc. 9) Whitlock has previously resided in Arizona, California, Florida, Nevada, and Oklahoma. (*Id.*) Whitlock reported to PTS that he resided in the

Phoenix metropolitan area for a period of two years and eventually relocated back to Ocean, New Jersey, in December 2010, to reside with his parents. He has never been married or fathered any children. Whitlock informed PTS, and his mother verified, that he has been unemployed since March 1, 2011. (*Id.* at 2) He listed his prior work experience as a salesman and golf pro. (*Id.*)

According to the initial PTS' report,[8] Whitlock's criminal history begins with an arrest for "Assault by Auto" in Ocean Township, New Jersey in July, 1997. Because there is no disposition provided on this charge, the Court will not consider it in its detention analysis. The PTS' supplemental report # 2, dated May 12, 2011, clarifies that the February 9, 2011 charges in Wall Township, New Jersey, involve possession of cocaine and marijuana and possession of "dum-dum" bullets.[9] (Doc. 11 at 1) Whitlock was released on a $9,000 bond but, surprisingly, no release conditions were imposed on Whitlock while he was on release. On March 24, 2011, Whitlock was again arrested in Wall Township, New Jersey, for the crime of Promoting or Facilitating the Commission of the Crimes of Transportation of a Firearm into the State of New Jersey for Unlawful Sale or Transfer that allegedly occurred on or about November, 2010. (*Id.* at 2) Whitlock was detained on this charge from March 24, 2011 until March 31, 2011 when he was released on bond of $180,000 without release conditions.[10] (*Id.*)

---

[8] It was initially difficult for PTS to obtain accurate and current information from the New Jersey state courts. Eventually, the New Jersey courts cooperated with the assigned PTS Officer who submitted a supplemental report on May 12, 2011, doc. 11.

[9] According to Wikipedia, a dumdum bullet is "[a]n expanding bullet [that] is . . . designed to expand on impact, increasing in diameter to limit penetration and/or produce a larger diameter wound. . . The two typical designs are the hollow point bullet and the soft point bullet." www.wikipedia.org/wiki/Expanding bullet, May 13, 2011.

[10] Some of the information contained in this paragraph was provided to the Court via supplemental report # 2 after Whitlock was ordered detained while the Court was writing this Order. If Whitlock would like to challenge the truthfulness of the additional information or present rebuttal evidence, he may request a hearing before the undersigned Magistrate Judge within 10 days after this Order is entered.

- 7 -

At the detention hearing, the Government informed the Court when the grand jury returned the indictment against Whitlock on April 19, 2011, the Government requested that he appear by summons, rather than by arrest, because Whitlock apparently does not have a prior criminal conviction and the Government was unaware at the time it authorized the summons of Whitlock's illicit drug usage and history.

The PTS' report informed the Court that the PTS' Officer interviewed Whitlock telephonically on Thursday, April 28, 2011 before Whitlock appeared in Phoenix pursuant to the summons for his initial appearance and arraignment on Wednesday, May 4, 2011. (Doc. 9)  During the telephonic interview, Whitlock reported that he first used marijuana at age 15 and claimed the last time he used marijuana was five years ago when he used it on a daily basis. (*Id.* at 3)  Whitlock also claimed that he last used methamphetamine in October 2010, and used it every two weeks at that time. (*Id.*)  Whitlock further informed the PTS' Officer that he first used cocaine at age 17, and last used cocaine in October 2010. Whitlock disclosed he used cocaine on a monthly basis and used cocaine continuously for a period of three years. (*Id.*)

Whitlock further informed the PTS' Officer that he had attended outpatient treatment in 2004, while residing in Miami, Florida for a period of 60 days and in-patient for period of 30 days. (*Id.*) Furthermore, he claimed that he attended nine months of substance abuse counseling in 2006, while residing in California and attended drug treatment in 2007, for four months in Oklahoma. (*Id.*) Whitlock reported he successfully completed drug treatment.

When Whitlock appeared in Phoenix on May 4, 2011, and contacted the PTS' Officer before his court appearance as requested, Whitlock voluntarily submitted a urine specimen which tested positive for cocaine and methamphetamine. (Doc. 10 at 1) Whitlock reported he used crack cocaine on April 29 and April 30, 2011. (*Id.*)

Whitlock's long-term addiction and continued illicit drug usage despite being released on substantial bond posted by his parents in the New Jersey felony cases and having actual knowledge of the pending federal Arizona indictment on serious felonies is alarming.

- 8 -

His inability to resist the urge to use cocaine and methamphetamine notwithstanding involvement in several in-patient and outpatient treatment programs render him utterly untrustworthy and inherently unreliable.

These detention factors weigh in favor of Whitlock's detention.

### E. Nature and Seriousness of the Danger to Release Defendant

Whitlock's inability to refrain from using illicit drugs and apparent willingness to do nearly anything to obtain drugs, such as, violating federal firearm laws by exchanging firearms for drugs, warrant Whitlock's detention until the conclusion of this case. The Court acknowledges that Whitlock appeared as directed for his initial appearance and arraignment. Nevertheless, federal law should not require a district court to wait until an apparently functioning addict, high on cocaine and/or methamphetamine, gets behind the wheel of a vehicle, crosses the centerline or runs a stop sign, and kills an innocent motorist before federal judges can take appropriate action to protect the community, regardless of whether that community is in Arizona or New Jersey. Whitlock's unrelenting use of powerful street drugs make him a danger if released. Moreover, Whitlock has undergone significant drug treatment in the last seven years. It is not reasonable to believe, nor has Whitlock admitted, that he has any desire to seriously address his drug issues or that his placement in Recovery Homes in Mesa, Arizona or any other qualified residential treatment facility would have any more benefit than his prior placements in 2004, 2006, and 2007 did.

These detention factors weigh in favor of Whitlock's detention.

### III. Conclusion

The Court is mindful that the Eighth Amendment's requirement that excessive bail shall not be required and "of the Eighth Amendment that 'Excessive bail shall not be required * * *' at the very least obligates judges passing on the right to deny such bail only for the strongest of reasons." *Sellers v. United States*, 89 S.Ct. 36, 38 (1968). Moreover, "[d]oubts whether [bail] should be granted or denied should always be resolved in favor of the defendant." *Herzog v. United States*, 75 S.Ct. 349, 351 (1955); *United States v. McGill*, 604 F.2d 1252, 1255 (9th Cir. 1979), *cert. denied*, 444 U.S. 1035 (1980).

The Government's burden of proof for purposes of detention is not trivial but as to flight, as compared to the higher clear and convincing standard for detention on the basis of danger to the community, it is only by a preponderance of the evidence standard. The Government must point to more than the indictment that a defendant might flee the United States or another state or is a danger to the public to obtain a defendant's pretrial detention. The Act requires the Government to prove by a preponderance of the evidence that Whitlock poses a "serious" flight risk and/or is a danger to the community if released, and no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. §3142(f)(2)(A)("a *serious* risk that such person will flee;") (emphasis added); *Gebro*, 948 F.2d at 1121. The Government has met its burden as to this Defendant on both grounds - serious flight risk and danger.

Based upon a balancing of the aforesaid detention factors and all the evidence and proffers presented at Whitlock's detention hearing, the Court finds that the Government has sustained its burden of proof by a preponderance of the evidence that Whitlock is a serious flight risk, by clear and convincing evidence that Whitlock is a danger to the community if released, and no condition or combination of release conditions would reasonably assure Whitlock's appearances at all future court proceedings and the safety of the public were Whitlock released from custody. Whitlock's uncontrollable affinity for the combination of guns and illegal drugs creates too great a risk that he be released from custody.

Accordingly,

**IT IS ORDERED** that the Government's oral motion for the pretrial detention of A. James Whitlock is **GRANTED**. Defendant Whitlock shall remain detained until further order of the assigned District Judge.

Dated this 13th day of May, 2011.

Lawrence O. Anderson
United States Magistrate Judge